**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHONTRICE L. GREEN,<br><br>               Plaintiff,<br><br>   v.<br><br>ANDREW M. SAUL,[1] Commissioner of<br>Social Security,<br><br>              Defendant. | Case No.: 1:19-cv-00058-BAM<br><br>**ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE**<br><br>**FINDINGS AND RECOMMENDATIONS REVERSING AGENCY'S DENIAL OF BENEFITS AND ORDERING REMAND**<br><br>**<u>FOURTEEN (14) DAY DEADLINE</u>** |

**<u>INTRODUCTION</u>**

Plaintiff Shontrice L. Green ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for findings and recommendations to the District Court.

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record and is not based on proper legal standards.  Accordingly, this Court will recommend that the Commissioner's

---

[1]     Andrew M. Saul is now the Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

determination be REVERSED and REMANDED for further proceedings.

**FACTS AND PRIOR PROCEEDINGS**

On May 6, 2015, Plaintiff filed an application for SSI alleging disability beginning November 1, 2009.  AR 224-232.[2]  Plaintiff's application was denied initially and on reconsideration and Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ").  AR 112-141, 158-173.  ALJ Scot Septer held a hearing on October 5, 2017, and issued an order denying benefits on March 8, 2018.  AR 15-64.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 1-6, 212-216.  This appeal followed.

**Relevant Hearing Testimony**

The ALJ held a hearing on October 5, 2017, in Fresno, California.  Plaintiff appeared in person with her attorney, Michael Donaldson.  Impartial Vocational Expert Stephen Schmidt also appeared. AR 34.

In response to questioning by the ALJ, Plaintiff testified that she lives in a house with her boyfriend and her children.  When asked about her work history, Plaintiff testified that she previously worked as a housekeeper.  She also worked as a packer for Foster Farms, which required her to package chickens, stand on her feet for a minimum of eight-to-nine hours, lift, bend, push boxes, paper trays, rotate, and to lift or carry an estimated twenty-five to forty-five pounds every two hours. Plaintiff testified that she stopped working as a packer for Foster Farms two weeks before the hearing because she was going to be terminated due to her inability to keep up with performance expectations. Plaintiff also provided living assistance and ran errands for a third-party individual for two hours per day every other day but testified that job was "getting ready to end" because she was unable to perform the duties.  Plaintiff further testified that the highest grade she completed in school was eleventh grade.  AR 42-48.

When asked about her daily activities, Plaintiff testified that her children usually do the cooking in their household although Plaintiff sometimes cooks Sunday dinner and helps her children.

---

[2]        References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff was the primary person who provided and cooked meals until approximately one year ago but testified that has changed over time because of her limitations with standing. Plaintiff further testified that her children clean and do the laundry and she has not done any of that work for a year due to her condition. Plaintiff grocery shops once a month using a motorized cart. Her son mostly drives for her because she has difficulty seeing and turning her head to the left, but she sometimes drives herself. AR 48-50.

With respect to her impairments, Plaintiff testified that she has sciatica and pain that radiates in her buttocks as well as her left leg and foot. She estimates that she can walk for two blocks before she must rest and can stand for fifteen minutes before she must sit and rest for fifteen-to-twenty minutes. When asked about her social activities, Plaintiff testified that she sometimes goes to the movies and shopping with her children. Her children are active in sports, but she experiences anxiety in crowds and does not attend their sports events. Plaintiff testified that she had difficulty with her coworkers while working at Foster Farms and would "get into it with them" and "curs[e] them" resulting in write-ups. She testified that she takes Klonopin, which helps with her anxiety until it wears off. Plaintiff also testified that her physical impairments worsened while working at Foster Farms because of strain from putting her head down and she would sometimes miss work. Plaintiff further testified that, during a typical day, she wakes up, washes, tries to go out and do some walking, and attends doctor appointments for herself or her children. She also reads and uses the internet. Plaintiff testified that the main issue that prevents her from working full-time is her degenerative disc disorder and bulging discs in her back. AR 50-54.

In response to questioning by her attorney, Plaintiff testified that she was absent from her work at Foster Farms for prolonged periods of time due to back issues and took three leaves of absence ranging from six-to-eight weeks each. She first started experiencing pain a year before getting her job at Foster Farms. Plaintiff further testified that she gets nervous around people and thinks they're out to get her and are talking about her. She also has issues one-on-one with supervisors and her nervousness is not limited to crowds of people. Plaintiff testified that her doctor told her not to lift more than ten pounds, she is not able to bend or stoop, and she has difficulty turning around. AR 55-56.

Following Plaintiff's testimony, the ALJ elicited testimony from the Vocational Expert ("VE") Stephen Schmidt. The VE testified that Plaintiff's work history included poultry dressing worker. The ALJ also asked the VE hypothetical questions. The ALJ asked the VE to assume an individual with the same age, education, and vocational background as Plaintiff. For the first hypothetical, the ALJ asked the VE to assume this hypothetical individual could perform work at the light exertional level, push and pull bilaterally with their upper extremities, occasionally climb ladders, ropes, scaffolds, ramps, and stairs, occasionally balance, crawl, crouch, kneel, and stoop, and could not work in jobs which require constant reading of fine print or frequent work with small objects. The VE testified that Plaintiff's past work would not be available but there would be other jobs available as a packer, cleaner, or cafeteria attendant. AR 57-59.

For the second hypothetical, the ALJ asked the VE to assume that the same individual in the first hypothetical would be limited to non-complex jobs requiring nothing more than simple, repetitive tasks and would be able to have frequent contact with coworkers and occasional contact with members of the general public. The VE testified that the same jobs identified in response to the first hypothetical would be available. AR 59-60.

For the third hypothetical, the ALJ asked the VE to assume that the individual in the second hypothetical would be limited to standing or walking for no more than four out of eight hours in an eight-hour workday. The VE testified that there would be no jobs available. AR 60.

Finally, Plaintiff's attorney asked the VE hypothetical questions. Plaintiff's attorney asked the VE to assume the same individual described in the ALJ's first hypothetical, except this individual would be off task twenty percent of the time due to medications and pain. The VE testified that there would be no work available. AR 61.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to the Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 15-33. Specifically, the

ALJ found that Plaintiff engaged in substantial gainful activity during the third quarter of 2016, the first quarter of 2017, and the third quarter of 2017. AR 18. However, there had been a continuous twelve-month period during which Plaintiff did not engage in substantial gainful activity and the remaining findings addressed the period that the Plaintiff did not engage in substantial gainful activity. AR 18. Further, the ALJ identified degenerative disc disease of the lumbar spine and obesity as severe impairments. AR 18. The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 20-21. Based on a review of the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, could lift and carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for up to six hours in an eight-hour workday, sit for up to six hours in an eight-hour workday, occasionally climb ladders, ropes, scaffolds, ramps, and stairs, occasionally push and pull bilaterally with her upper extremities, occasionally balance, crawl, crouch, kneel and stoop, and should not work in jobs that require constant reading of fine print or frequent work with small objects. AR 21-26. With this RFC, the ALJ determined that Plaintiff was unable to perform any past relevant work. AR 27. Plaintiff was classified as a younger individual age 18-49 on the date the application was filed, has limited education and is able to communicate in English, and transferability of job skills was not an issue in the case because Plaintiff's past relevant work was unskilled. AR 27. Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. AR 27-28. The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, since May 6, 2015, the date the application was filed. AR 28-29.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112,

1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff contends that the ALJ erred by (1) improperly evaluating the opinion evidence from treating physician Dr. Thomas Bryan; (2) improperly determining that Plaintiff's mental impairments were non-severe; and (3) improperly evaluating Plaintiff's subjective complaints. (Doc. No. 24.)

### A. The ALJ's Evaluation of the Opinion Evidence from Dr. Thomas Bryan

Plaintiff first argues that the ALJ improperly rejected the opinions of Dr. Thomas Bryan, her

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

treating physician. (Doc. No. 24 at 6-8.) Specifically, Plaintiff asserts that the ALJ erred by failing to give Dr. Bryan's "uncontradicted" opinions controlling weight and by failing to provide an adequate explanation for assigning those opinions little weight. (Doc. No. 24 at 6.) The Court disagrees.

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.* The ALJ meets this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989).

On March 21, 2017, Dr. Bryan conducted an evaluation of Plaintiff. AR 496. According to Dr. Bryan's treatment notes, Plaintiff reported pain due to bending on the line and pushing boxes during her work at Foster Farms. AR 496. Dr. Bryan assessed chronic lower back pain and noted a prior MRI revealed disc desiccation at the L4-L5 levels. AR 496. Dr. Bryan proposed asking Plaintiff's employer to accommodate her at a job where she does not need to bend over or twist a lot. AR 496. Dr. Bryan wrote a letter dated March 21, 2017, stating that he "suggested to [Plaintiff] that she avoid bending or twisting her low back at work as it causes an exacerbation of her low back pain and may quicken the disc deterioration that is already present." AR 497.

On July 31, 2017, Dr. Bryan again evaluated Plaintiff and assessed chronic neck and lower back pain. AR 507. Dr. Bryan indicated that Plaintiff was ready to go back to work full time with a restriction of lifting in excess of ten pounds. AR 507.

On November 27, 2017, Dr. Bryan provided a form medical source statement opining that Plaintiff was not capable of performing a full-time job that is eight hours per day, five days per week, on a regular and continuing basis. AR 511. He noted that he had been treating Plaintiff since

November 2015 and she had been diagnosed with chronic neck and lower back pain. AR 511. Her symptoms included pain and stiffness in the neck, pain in her lower back, and mixed bipolar disorder. AR 511. Plaintiff's treatment included hydrocodone for pain, Depakote for bipolar disorder, and Ambien for sleep, and Prazosin for nightmares. AR 511. Dr. Bryan did not complete form questions regarding Plaintiff's maximum ability to stand, walk, sit, lift, or carry, whether Plaintiff needed the freedom to shift at will between sitting or standing/walking, and whether Plaintiff needed to lie down at unpredictable times during an eight-hour workday. AR 511. Dr. Bryan estimated that Plaintiff's impairments would cause her to be absent from work more than three times per month. AR 511.

The ALJ assigned "little weight" to Dr. Bryan's opinions, reasoning that they were "unspecific in terms of the claimant's functional capacity. Furthermore, as for his statements about being unable to work, such statements are on issues reserved to the Commissioner, and they are not persuasive in supporting a more restrictive finding." AR 26. The ALJ also noted that Dr. Bryan's opinion was contradicted by Dr. Estrin, and Dr. Bryan's statement that Plaintiff could not work was "not persuasive in supporting a more restrictive finding in the absence of a clinical basis for his opinion on the claimant's physical restrictions." AR 27. However, the ALJ stated that he incorporated Dr. Bryan's limits on bending and twisting of her low back in to the RFC finding. AR 26.

Dr. Bryan's July 31, 2017 and November 27, 2017 Opinions

In this instance, the Court finds that the ALJ properly discounted Dr. Bryan's July 31, 2017 and November 27, 2017 opinions that Plaintiff could return to work with a restriction of lifting no more than ten pounds, could not work full-time, would miss three or more workdays per month. Contrary to Plaintiff's assertions, Dr. Bryan's opinions were contradicted by State agency physicians B. Young, M.D., Tawnya Brode, Psy.D, John Bonner, M.D., and H.M. Estrin, M.D., all of whom opined that Plaintiff's limitations were less severe than those opined by Dr. Bryan. AR 112-125, 129-140. As a result, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record to discount these opinions.

The ALJ first discounted Dr. Bryan's opinions because they were unspecific in terms of Plaintiff's functional capacity. The ALJ further noted that Dr. Bryan's opinions lacked clinical findings for the basis of his opinion regarding Plaintiff's restrictions. An ALJ may properly

reject vague and conclusory physician opinions. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); *see also Magallanes*, 881 F.2d at 751. "[T]he ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion.'" *Magallanes,* 881 F.2d at 751 (quoting *Young v. Heckler,* 803 F.2d 963, 968 (9th Cir. 1986)); *see also Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (An ALJ may "permissibly reject[ ] ... check-off reports that [do] not contain any explanation of the bases of their conclusions."); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ permissibly rejected psychological evaluations "because they were check-off reports that did not contain any explanation of the bases of their conclusions"). "Medical equivalence must be based on medical findings. A generalized assertion of functional problems is not enough to establish disability[.]" *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations and quotation marks omitted). Here, Dr. Bryan's November 27, 2017 opinion that Plaintiff was not capable of working full-time and would be absent from work more than three times per month and his July 31, 2017 opinion that Plaintiff was could not lift more than ten pounds were brief, vague, and conclusory in form and did not provide clinical findings to support the stated conclusions. The ALJ was entitled to give Dr. Bryan's opinions little weight on these bases.

The ALJ also discounted Dr. Bryan's opinion regarding Plaintiff's ability to work full-time because this issue is reserved to the Commissioner. Whether a claimant can work competitively is an issue reserved specifically to the Commissioner, and a physician's opinion on this issue is not entitled to special significance. 20 C.F.R. § 404.1527(d)(1); Social Security Ruling ("SSR") 96-5p, 1996 WL 374183 (July 2, 1996) (stating that a medical source opinion about whether an individual is unable to work, even when offered by treating source, is not entitled to controlling weight or given special significance); *see also Jackson v. Colvin*, 2016 WL 775929, at *10 (E.D. Cal. Feb. 29, 2016) (reasoning that a statement offered by a physician that a plaintiff is unable to work not entitled to any special significance because it constitutes an opinion on issue reserved to the Commissioner); *Henry v. Colvin*, 2016 WL 164956, at *15 (E.D. Cal. Jan 14, 2016) (holding that the ALJ properly gave minimal weight to physician's opinion that claimant was unemployable; determination of whether a claimant is disabled is reserved for the Commissioner); *Connolly v. Colvin*, 2016 WL 8730722, at *9 (E.D. Cal. Sept. 16, 2016) (finding that the ALJ properly found that treating physician's speculation

9

regarding Plaintiff's employability in a competitive work environment carried no probative weight); *cf. McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2010) (nothing that the law reserves disability determination to Commissioner). Therefore, the ALJ properly discounted Dr. Bryan's opinion regarding Plaintiff's ability to work full-time.

The ALJ weighed the evidence and gave legally sufficient reasons for rejecting Dr. Bryan's July 31, 2017 and November 21, 2017 opinions that Plaintiff could not work full-time, would miss three or more workdays per month, and could lift no more than ten pounds. These statements were vague, conclusory, and lacked supporting clinical findings. Moreover, Dr. Bryan's opinion regarding Plaintiff's inability to work constituted an opinion on an issue reserved to the Commissioner and was not entitled to any weight. The Court therefore finds that the ALJ's decision to give these portions of Dr. Bryan's opinions little weight is supported by substantial evidence.

Dr. Bryan's March 21, 2017 Opinion on Bending and Twisting

In his opinion, the ALJ stated that he incorporated Dr. Bryan's March 21, 2017 opinion that Plaintiff should avoid bending and twisting of her low back in to the RFC finding. AR 26 ("although limits on bending and twisting of her low back are incorporated into the ablove residual functional capacity.") However, the ALJ's RFC finding did not include any limitations on bending and twisting. AR 21. This was error. *See, e.g., Dela Cruz v. Colvin*, 2014 WL 2865076, *2-3 (C.D. Cal. 2014) (remanding for further proceedings where the ALJ did not assess all of claimant's medically determinable impairments in the RFC analysis); *Winter-Duncan v. Astrue*, 2012 WL 1641891, *4 (W.D. Wash. 2012) (same); *Solomon v. Comm'r of Soc. Sec. Admin.*, 376 F. Supp. 3d 1012, 1021 (D. Ariz. 2019) (same). The ALJ also erred by omitting these limitations from the hypotheticals posed to the VE. AR 59-60. When formulating hypotheticals, "an ALJ is not free to disregard properly supported limitations." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). The ALJ ultimately determined that Plaintiff could perform the occupations of packer, cleaner, and cafeteria attendant. AR 28. In light of the requirements of these occupations,[4] it appears Plaintiff's limitations

---

[4] The packer occupation requirements include:

in bending and twisting of her low back could potentially prevent her from performing the occupations of packer, cleaner, and cafeteria attendant. Accordingly, remand is appropriate.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Unless "the record has been fully developed and further administrative proceedings would serve no useful purpose," remand for further proceedings is warranted. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Here, the circumstances of this case indicate that there are outstanding issues that must be resolved before a final determination can be made. Moreover, further administrative review may remedy the ALJ's error and thus remand is appropriate. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011); *see also Garrison*, 759 F.3d at 1021 (court may "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled"). Therefore, the Court will remand for further proceedings for the limited purpose of assessing Plaintiff's RFC and whether there are jobs that exist in significant numbers in the national economy that Plaintiff can perform in light of the

---

Tends machine that inserts filled beer bottles into cardboard cartons: Positions empty carton on platform below automatic packer. Presses pedal to raise platform to packer level and to deposit bottles in carton. Releases pedal and pushes full carton onto conveyor. Straightens or resets partitions in carton."

Bottle Packer, DOT 920.685-026, 1991 WL 687929 (Jan. 1, 2016).

The cleaner occupation requirements include:

Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title. May be designated according to type of establishment cleaned as Beauty Parlor Cleaner (personal ser.); Motel Cleaner (hotel & rest.); or according to area cleaned as Sleeping Room Cleaner (hotel & rest.).

Cleaner, DOT 323.687-014, 1991 WL 672783 (Jan. 1, 2016).

The cafeteria attendant occupation requirements include:

Carries trays from food counters to tables for cafeteria patrons. Carries dirty dishes to kitchen. Wipes tables and seats with dampened cloth. Sets tables with clean linens, sugar bowls, and condiments. May wrap clean silver in napkins. May circulate among diners and serve coffee and be designated Coffee Server, Cafeteria Or Restaurant (hotel & rest.).

Cafeteria attendant, DOT 311.677-010, 1991 W: 672694 (Jan. 1, 2016).

limitation on bending and twisting.

**B. The ALJ Did Not Err in Evaluating Plaintiff's Mental Impairments**

Plaintiff argues that the ALJ erred in his evaluation of Plaintiff's mental impairments. Specifically, Plaintiff disputes the ALJ's finding that Plaintiff's mental impairments were non-severe because, according to Plaintiff, the record contained "evidence of problems sufficient to pass the de minimis threshold of step two." (Doc. No. 24 at 8-10.) Moreover, Plaintiff asserts that the ALJ had a duty to supplement Plaintiff's medical record by obtaining a consultative psychiatric evaluation. (*Id.* at 8-9.)

<u>Step Two Finding</u>

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is "severe" if it significantly limits a claimant's ability to perform basic work activities for at least a consecutive twelve-month period. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); SSR 96–3p, 2018 WL 3461816 (June 14, 2018). In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. *See Smolen v. Chater,* 80 F.3d 1273, 1289–90 (9th Cir.1996); *see also* 42 U.S .C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.

An impairment, or combination of impairments, can be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *See* SSR 85–28, 1985 WL 56856 (Jan. 1, 1985); *see also Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir.1988) (adopting SSR 85–28). The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. *See* 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient. *See id.* Indeed, "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala,* 10 F.3d 678, 680 (9th Cir.1993).

Here, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of

the lumbar spine and obesity. AR 18-20. According to Plaintiff, she was diagnosed with mixed bipolar disorder and anxiety, reported being molested as a child and abused as an adult, and was irritable, distrustful and suspicious of others, and experienced "racing thoughts – difficulty concentrating, depressed mood, etc." (Doc. No. 24 at 8-9.) Plaintiff cites generally to treatment notes from Dr. Bryan, a neurology and pain management specialist, in support of her claim that she suffered from severe mental impairments. (*Id.*)

Although the ALJ is not required to discuss every piece of evidence in the record, *see Gonzalez v. Sullivan,* 914 F.2d 1197, 1200–01 (9th Cir.1990), the ALJ properly summarized the evidence and discussed the mental impairments Plaintiff identifies in her brief, as well as the additional mental impairment of depression. AR 19-20. In finding that Plaintiff's mental impairments were not severe, the ALJ noted that Plaintiff reported depressive and anxiety symptoms but found that her "medically determinable mental impairments of depression, anxiety, and bipolar disorder, considered singly and in combination, did not cause more than minimal limitation in [her] ability to perform basic mental work activities and were therefore nonsevere." AR 19. In support of this conclusion, the ALJ noted that the mental health evidence was minimal and unremarkable, and there was no evidence of Plaintiff seeing a psychiatrist or therapist consistently, being hospitalized for psychiatric treatment, or receiving any specialized psychiatric care. AR 19. Additionally, the ALJ considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments, known as the paragraph B criteria, and listed abilities and aptitudes that reflected at most mild limitations. AR 19-20. Plaintiff was able to attend her physician appointments and interact with them to get her medical needs met and she reported that she does not need help remembering to take her medications or to take care of her personal needs or grooming. AR 20. Plaintiff reported that she did not have problems getting along with family friends, neighbors, or others but testified that she became nervous around people and thinks they are talking about her. AR 20. Additionally, Plaintiff reported having difficulty concentrating but had since been taking medication for bipolar disorder and had a favorable response. AR 20. Plaintiff was able to testify on her own behalf and pay attention during the hearing, which lasted approximately forty minutes. AR 20. Moreover, Plaintiff was able to care for her children and herself, perform light household duties,

read, and enjoy her children and grandchildren. AR 20. As a result, the ALJ found that Plaintiff's medically determinable mental impairments caused no more than a mild limitation in any of the functional areas and were non-severe. AR 20.

Plaintiff fails to prove that any of her mental impairments are severe under the regulatory definition. Although Plaintiff was diagnosed with depression, anxiety, and bipolar disorder, this alone is insufficient to warrant a finding of a severe impairment at step two, as the mere existence of an impairment, or even multiple impairments, does not establish severity. *Matthews,* 10 F.3d at 680; *see also Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) (*citing Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)) ("[T]he claimant must show more than the mere presence of a condition or ailment."); *Holaday v. Colvin*, 2016 WL 880971, at *12 (E.D. Cal. Mar. 8, 2016) ("The mere fact that plaintiff was diagnosed with such conditions is, by itself, insufficient to demonstrate that they were 'severe' for step two purposes."); *Mahan v. Colvin*, 2014 WL 1878915, at *2 (C.D. Cal. May 12, 2014) ("[A] mere diagnosis does not establish a severe impairment."). Plaintiff argues that the ALJ "cherry-picked" evidence to support his finding[5] but her summary of the evidence of her mental impairments is consistent with the evidence that the ALJ considered in determining the severity of Plaintiff's mental impairments. (*See* Doc. No. 24 at 8-9.) AR 19-20. Plaintiff does not cite to any evidence that the ALJ failed to consider or otherwise explain how her additional impairments are severe, let alone disabling. Plaintiff's argument that the ALJ's evaluation was "not comprehensive and analytically feasible that this Court may know the basis for his decision" is likewise unavailing as the Court is able to reasonably discern the ALJ's path for the purpose of review. (Doc. No. 24 at 10.)

---

[5]    Specifically, Plaintiff argues that the ALJ erred in his "step three" analysis by because he "cherry-picked" evidence and set forth "mere statements that Ms. Green did not meet or equal listings because of mild limitations in daily activities, etc." (Doc. No. 24 at 10.) However, this argument appears to refer to the ALJ's reasoning at step two and not step three. Because Plaintiff made a claim for a mental impairment, the ALJ was required to make use of the "special psychiatric review technique" and determine whether Plaintiff had a medically determinable mental impairment, rate the degree of functional limitation for four functional areas, and determine the severity of the mental impairment in part based on the degree of functional limitation. 20 CFR § 404.1520a(b), (c). Only then, if the impairment were severe, would the ALJ proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder. *Id.* Because, as discussed herein, the ALJ appropriately found that Plaintiff's mental impairments were non-severe, there was no requirement to proceed to step three. Moreover, to the extent Plaintiff means to argue that the ALJ erred at step three by not considering whether her mental impairments met or equaled the listing criteria, this argument is meritless because she fails to explain how her impairment meets or equals the listing criteria. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

*See Brown-Hunter v. Colvin*, 806 F.3d 487, 493-494 (9th Cir. 2015). Thus, the ALJ's finding that Plaintiff's mental impairments were non-severe is free of error.

### Duty to Develop the Record

As part of her contention that the ALJ erred in his step two analysis, Plaintiff also argues that the ALJ failed to adequately develop the record by not obtaining a consultative psychiatric evaluation to establish the severity of Plaintiff's mental impairments. (Doc. No. 24 at 9-10.) This argument is likewise unpersuasive.

"In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered[.]" *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). The ALJ's duty to "conduct an appropriate inquiry" is triggered only where evidence is ambiguous or the record is inadequate to allow for proper evaluation of the evidence. *Id.*; *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). When such a duty is triggered, an ALJ can develop the record by: (1) making a reasonable attempt to obtain medical evidence from the claimant's treating sources; (2) ordering a consultative examination when the medical evidence is incomplete or unclear and undermines the ability to resolve the disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4) continuing the hearing; or (5) keeping the record open for more supplementation. *Tonapetyan,* 242 F.3d at 1150; 20 C.F.R. § 404.1517.

Plaintiff contends that, because there was evidence that she suffered from a mental impairment, the ALJ should have obtained a consultative psychiatric evaluation to establish the severity of Plaintiff's mental impairments. (Doc. No. 24 at 9-10.) However, the burden is on the claimant to establish disability. *Terry,* 903 F.2d at 1275; 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"). Because it is the Plaintiff's burden to present evidence of disability, the mere absence of an opinion from an examining physician does not give rise to a duty to develop the record; rather, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Alvarez v. Astrue*, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the state agency

physicians and plaintiff's complete treatment records); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512(a) ("[Y]ou have to prove to us that you are … disabled….").

Plaintiff has not demonstrated that the record was ambiguous or inadequate to allow for proper evaluation. The ALJ summarized the medical evidence in the record, including evidence related to Plaintiff's mental impairments, and found with the support of that record that Plaintiff had not established she was disabled. AR 15-29. The record contained what appears to be Plaintiff's complete treatment records, which supported the ALJ's findings and did not present an ambiguity or inadequacy. Notably, the ALJ kept the record open after the hearing at counsel's request for additional medical records. AR 37-39, 61-63. The fact that the ALJ kept the record open after the hearing for Plaintiff to submit additional evidence is sufficient to satisfy any duty to develop the record. *Tonapetyan*, 242 F.3d at 1150; *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ's indication to plaintiff and her counsel that he would keep the record open so that they could supplement her doctor's report satisfied ALJ's duty to develop the record).

Here, the ALJ did not find that the record was insufficient or inadequate to determine disability, nor does Plaintiff identify any ambiguous or unclear treatment notes, medical opinions, or other evidence. Therefore, the ALJ did not have a duty to further develop the record. Even if such a duty did exist, Plaintiff was provided the opportunity to present additional medical records. The ALJ was not required to obtain a consultative psychiatric evaluation and did not err in developing the record.

### C. The ALJ Properly Evaluated Plaintiff's Subjective Complaints

Finally, Plaintiff argues that the ALJ erred in her evaluation of Plaintiff's subjective complaints by failing to provide clear and convincing reasons to discount her testimony. (Doc. No. 24 at 11-12.) However, the Court finds that the ALJ adequately provided clear and convincing reasons for discounting Plaintiff's testimony.

In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of*

*Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but rejected her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 23. The ALJ did not find that Plaintiff was malingering and was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's testimony.

First, the ALJ discounted Plaintiff's statements based on the objective medical evidence. AR 23. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). According to Plaintiff, the ALJ committed error because he "erroneously summarized [Plaintiff's] statements from the records, stated a non-credibility conclusion and then summarized the medical evidence that supported his RFC determination." (Doc. No. 24 at 11.) Citing to *Brown-Hunter*, 805 F.3d at 489, Plaintiff argues that "[t]his is not the sort of explanation or the kind of specific reasons the court must have in order to review the ALJ's decision meaningfully to ensure that [Plaintiff's] testimony was not arbitrarily discredited." (Doc. No. 24 at 11.)

In *Brown-Hunter*, the Ninth Circuit held that an ALJ errs "by making only a single general statement that the claimant' statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above, without identifying sufficiently specific reasons for rejecting the testimony, supported by evidence in the case record." *Brown -Hunter,* 806 F.3d at 493 (citation and quotation marks omitted). There, the ALJ "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination," which "is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully . . . [to] ensure that the claimant's testimony was not arbitrarily discredited." *Id.* at 494. The ALJ's failure to identify the testimony that was found not to

be credible and to link that testimony to the particular parts of the record supporting the non-credibility determination was legal error. *Id.*

In this case, the ALJ linked Plaintiff's symptom testimony that he found not to be credible to particular parts of the record. AR 21-26. The ALJ first summarized Plaintiff's testimony regarding the persistence, intensity, frequency, and limiting effects of her pain. AR 21-23. Contrary to Plaintiff's assertion, this summary was not "erroneous" and instead accurately reflected Plaintiff's statements at the hearing and in the record. *See* AR 21-22, 50-56, 278-286. The ALJ then devoted approximately three pages and fifteen paragraphs to detailing the specific medical evidence in the record that did not support that testimony. AR 23-26. Unlike *Brown-Hunter*, the Court need not speculate about the basis of the ALJ's determination or substitute its conclusions for the ALJ's because the ALJ not only succinctly summarized Plaintiff's symptom testimony, but he also clearly indicated what evidence he found to be inconsistent. *See Brown-Hunter,* 806 F.3d at 495.[6] "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation ... and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999) (citation omitted). In light of the ALJ's extensive discussion and comparison of the relevant testimony to the record, the Court is satisfied that the medical evidence in the record was adequately considered. Thus, the Court finds no error with the ALJ's determination that Plaintiff's testimony was inconsistent with the objective evidence and physical examinations.

Second, in addition to the objective medical evidence, the ALJ discounted Plaintiff's subjective allegations because her reported activities of daily living were not consistent with her alleged limitations. AR 23, 27. An ALJ can properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina,* 674 F.3d at 1112–1113 (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms" in determining credibility). Here,

---

[6] While the ALJ's opinion could have been more clearly stated, the Court is able to reasonably discern the ALJ's path for the purpose of review. *See Brown-Hunter, supra,* 806 F.3d at 493-494; *Jose v. Berryhill,* 2018 WL 1244763 at *6 (D. Or. Mar. 12, 2018) ("[E]ven if the ALJ could have stated each reason more clearly, the Court is still able to 'reasonably discern' the ALJ's path.").

the ALJ considered Plaintiff's reports that she prepares Sunday dinners, can perform some household duties although she is limited at times and has to stop and finish the next day, uses public transportation, and is able to shop once per month for basic needs and necessities using a cane or motorized chair. AR 21-22. Plaintiff spends time on the phone with family who live out of state on a weekly basis and she attends doctor appointments and physical therapy. AR 22. She drives occasionally, although she has difficulty sitting and turning her neck, and likes to get out of the house with her children by shopping and going to the movies. AR 22. Plaintiff tries to stay active if possible, she likes to read and use the internet, and she takes her children to doctor and dental appointments. AR 23.

Plaintiff first argues that the ALJ "mischaracterized" Plaintiff's testimony in determining that it was inconsistent with her activities of daily living. (Doc. No. 24 at 11-12.) Plaintiff then summarizes various areas in which Plaintiff testified that she had difficulty performing activities of daily living. (*Id.*) However, as Plaintiff acknowledges, all of this testimony was also included in the ALJ's summary. (*Id.*) AR 21-23. Plaintiff does not identify any inconsistencies between the ALJ's summary of Plaintiff's testimony and the evidence in the record, nor does she identify any testimony which was not considered. (Doc. No. 24 at 11-12) AR 22-23. Thus, Plaintiff's argument that the ALJ "mischaracterized" her testimony regarding her activities of daily living is without merit.

Plaintiff further argues that the ALJ erred in discounting Plaintiff's testimony due to inconsistency with her reported daily activities because "[t]he Ninth Circuit has repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." (Doc. No. 24 at 12.) Plaintiff also contends that "[m]any of [her] home activities are not easily transferrable to what may be the more grueling environment of the workplace" but does not provide any explanation or further support for this conclusion. Plaintiff cites to *Smolen,* 80 F.3d at 1287 and *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) in support of her arguments. However, these cases to not stand for such broad propositions and the Court does not find them to directly discredit the ALJ's decision.

In *Smolen,* the ALJ rejected the claimant's complaints of severe fatigue and back pain as not credible because they were not supported by contemporaneous medical evidence. *Smolen,* 80 F.3d at 1284. As a subsidiary finding, the ALJ noted that the claimant's daily activities were "quite limited." *Id.* The Ninth Circuit reversed the ALJ's credibility finding because, even though the claimant's medical records were sparse during the relevant period, they did not contain contradictory statements and there was other substantial corroborating evidence in the record. *Id.* at 1284-1285. In its decision, the *Smolen* court briefly noted that the ALJ's finding that the claimant's daily activities were "quite limited" supported a finding that her testimony was credible. *Id.* at 1284.

In *Reddick,* the ALJ rejected the claimant's subjective complaints of disability based on chronic fatigue syndrome because she had engaged in aerobic activities and sold Tupperware. *Reddick,* 157 F.3d at 722. The Ninth Circuit held that the ALJ's reliance on these activities was misplaced, because the activities as described "were fully consistent with CFS" and the ALJ did not "fully account[] for the context of . . . the testimony" as well as "the nature of CFS and its symptoms[.]" *Id.* at 722-723. Accordingly, the Court remanded for an award of benefits. *Id.* at 728-730.

Unlike *Smolen,* the ALJ in this case did not find that Plaintiff's daily activities were "quite limited." Furthermore, in contrast to *Reddick,* the ALJ in this case included the context of Plaintiff's statements in his summary of her testimony and there is no indication that he failed to account for the nature of Plaintiff's impairment and its symptoms in evaluating Plaintiff's testimony. The Court does not find the ALJ's decision in this case to be similar to *Smolen* or *Reddick*. Furthermore, neither *Smolen* nor *Reddick* "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain" in the manner Plaintiff claims. (*See* Doc. No. 24 at 12.)

While disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations, where the level of activity is inconsistent with a claimant's claimed limitation, those activities have bearing on a claimant's credibility. *Reddick*, 157 F.3d at 722. As the Ninth Circuit explained in *Fair v. Bowen,* 885 F.2d 597, 604 (9th Cir. 1989), "if [the plaintiff] remains able to perform ordinary household and personal tasks, then he has not carried his burden of proving that

his pain prevents him from returning to [work]. While such reasoning may not hold up in all cases . . . it is sufficient here, as [the plaintiff] has not put forward any evidence that reconciles the inconsistency between his words and his actions." Such circumstances are evident in this case. The ALJ's decision recognizes that Plaintiff has some work limitations, however, he discredits Plaintiff's testimony that her limitations due to pain render her completely unable to work. AR 23. Even where Plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113. Thus, the ALJ properly considered plaintiff's daily activities as a factor in assessing plaintiff's credibility.

The ALJ is the trier of fact and he is permitted to reject testimony regarding subjective symptoms as long as he makes specific findings justifying that decision. *Fair,* 885 F.2d at 604; *see also Bunnell v. Sullivan,* 947 F.2d 341, 346 (9th Cir. 1991) ("So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence." ); *Hayatgheyb v. Callahan,* 120 F.3d 268 (9th Cir. 1997) (upholding an ALJ's finding that the plaintiff was not credible where he "made sufficient inquiries into [plaintiff's] daily routine and medical and work history, and made specific findings to justify her rejection of his pain testimony[.]" (citations omitted)). Where the ALJ makes a reasonable interpretation of the claimant's testimony, it is not the Court's role to second-guess it. *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001). The Court concludes that the ALJ's interpretation was reasonable and he made the requisite specific findings to reject Plaintiff's subjective symptom testimony.

**<u>ORDER AND RECOMMENDATION</u>**

Based on the foregoing, the Clerk of the Court is HEREBY ORDERED to randomly assign a District Judge to this action.

Furthermore, it is HEREBY RECOMMENDED that the administrative decision of the Commissioner of Social Security be **REVERSED** and the case **REMANDED** to the ALJ for further proceedings. On remand, the ALJ should reconsider Plaintiff's RFC in light of Dr. Bryan's March 21, 2017 opinion that Plaintiff should avoid bending and twisting of her low back. The ALJ shall then

determine what work, if any, Plaintiff is capable of performing.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 13, 2020**                  /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE